UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MISSOURI
EASTERN DIVISION

MISSOURI COALITION FOR THE )
ENVIRONMENT FOUNDATION, )
 )
     Plaintiff, )
 ) No. 4:05CV02039 FRB
 )
v. )
 )
UNITED STATES ARMY CORPS )
OF ENGINEERS, )
 )
     Defendant. )

**MEMORANDUM AND ORDER**

     This matter involves a dispute concerning a request for information made by the Missouri Coalition for the Environment Foundation ("plaintiff") pursuant to the Freedom of Information Act, or "FOIA", 52 U.S.C. § 552 et seq. Presently before the Court are the parties' cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8 and 9, filed March 31, 2006.) All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I. Background**

     The following facts are not in dispute. In 1997, the United States Army Corps of Engineers ("defendant" "Corps" or "agency") initiated the Upper Missouri River System Flow Frequency Study ("FFS") to update flood risk profiles for three major rivers:

- 1 -

the Upper Missouri River, the Lower Missouri River, and the Illinois River. (Declaration of Thomas B. Minear/Docket No. 8-3 ("Minear Declaration"); Declaration of David M. Goldman/Docket No. 8-4 ("Goldman Declaration").)[1] The study was a multi-year, multi-million dollar study undertaken by the Corps with the goal of recalculating flood frequencies on the aforementioned rivers. (Plaintiff's Statement of Uncontroverted Material Facts/Docket No. 9 at 1.)

To accomplish this study, defendant created a task force to oversee and review the process. This task force was divided into two groups: the Technical Advisory Group ("TAG"), and the Inter-Agency Advisory Group ("IAG"). (Minear Declaration at 1-2; Goldman Declaration at 2.) The TAG was comprised of subject matter experts, either affiliated with a university or in private practice, from some of the states where the river profiles were investigated.[2] Id. The IAG was comprised of subject matter

---

[1] Dr. David M. Goldman, a Research Hydraulic Engineer employed by the Corps, was a TAG member, and Thomas B. Minear served as Corps counsel and FOIA officer. (Goldman Declaration at 1; Minear Declaration at 1.)

[2] Not all of the seven states where the river profiles were investigated were represented on the task force. The TAG members were Dr. David M. Goldman, Dr. Jon Hosking of the IBM Watch and Research Center; Dr. William Lane formerly of the Bureau of Reclamation; Dr. Kenneth Potter of the University of Wisconsin; Dr. Jery Stedinger of Cornell University; and Mr. Wilbert Thomas, consultant with Michael Baker, Jr., Inc. (Goldman Declaration at page 2.) In addition, the following persons participated in TAG and IAG discussions: Thomas Yorke, Michael Norris, Tim Cohn, John England, and Gary Dyhouse. (Second Declaration of David M. Goldman, Docket No. 13 at 1.)

experts from federal agencies.[3]  Id.  Both TAG and IAG members communicated with the Corps regarding the proper study methodology. (Minear Declaration at 2; Goldman Declaration at 2.)  After establishment of those methodologies, the TAG and IAG reviewed the flood risk estimates obtained by applying these methods for the study basins.  Id.  These communications, along with communications between TAG and IAG members concerning what recommendations to make to defendant, are at issue in the present case in the form of emails, letters, memoranda, and documents pertaining to meetings. Id.

In 2003, before completion of the study, plaintiff submitted a FOIA request to defendant, and subsequently withdrew it to await completion of the FFS.  (Minear Declaration at page 2.) The FFS was completed in 2004.  (Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment/Docket No. 12 at page 4.)[4]  On April 25, 2005, plaintiff submitted a second FOIA request to defendant, which is the subject of the present litigation. (Plaintiff's FOIA request, Docket No. 1-2; see also Minear Declaration at page 2.)  That request read in part as

---

[3]The IAG members were Kenneth Bullard of the Bureau of Reclamation; Alan Johnson of the Federal Emergency Management Agency; Lesley Julian of the national Weather Service; William Kirby of the United States Geological Survey; Don Woodward of the Natural Resource Conservation Service; and Greg Lowe and Mike Eiffe of the Tennessee Valley Authority.  (Goldman Declaration at 2.)

[4]Plaintiff does not dispute that the FFS was completed in 2004.

follows:

> These requests include all documents that are within the possession, custody or control of the U.S. Army Corps of Engineers, regardless of the person or entity that may have created the document or the office in which responsive documents are now located. This request does not include any of the publicly accessible documents relating to the Flow Frequency Study that can be found on the Corps' web site as of the date of this request.
>
> If you withhold all or part of a document under claim of privilege or exemption from FOIA, then please indicate that you are doing so and the reasons therefore, including the legal authority for your decision to withhold the document.
>
> This FOIA request includes the following items:
>
> 1. Each and every document that evidences a communication to or from a member of the Flow Frequency Study Technical Advisory Group, regardless of the other party to the communication, relating to the Flow Frequency Study.
>
> 2. All agendas and minutes of meetings of the Flow Frequency Study Technical Advisory Group.
>
> 3. Each and every document that evidences disagreement, dispute or concern about the assumption adopted in the Flow Frequency Study that flood flows have been "independently and identically distributed" (aka the assumption of "stationarity").

(Plaintiff's FOIA request at pages 1-2.)

Following receipt of plaintiff's FOIA request, defendant remained in contact with plaintiff via telephone, but produced no

documents. (Minear Declaration at page 2.) On November 5, 2005, plaintiff filed the instant cause of action, seeking both injunctive relief against defendant and attorneys' fees. In response, defendant argues that it is exempt from providing the requested documents by the FOIA "deliberative process" privilege, set out in 5 U.S.C. § 552(b)(5) ("Exemption 5"). In support of this argument, defendant filed a "Vaughn"[5] index describing each document and indicating that it was exempted from production by Exemption 5. (Docket Nos. 8-5 and 8-6/filed March 31, 2006) ("Vaughn index"). Defendant further provided the Minear and Goldman Declarations, both of which defined the TAG and IAG and described both the nature of the study and the interplay between the TAG, IAG and the Corps, and also explained defendant's rationale for claiming that the requested documents were protected from disclosure by Exemption 5. (Minear and Goldman Declarations.)

Via the Minear and Goldman declarations and the Vaughn index, defendant submits that the requested documents consist of the following: (1) emails, memoranda, letters, and materials related to meetings, dated from 1997 through 2000, prepared by and circulated amongst TAG and IAG members, discussing comments of TAG and IAG members, discussing meetings, suggesting proposed

---

[5]The term "Vaughn index" is derived from the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1974). A Vaughn index is a list that describes each document withheld by an agency with "reasonably detailed" information to enable a district court to rule whether it falls within an exemption provided by FOIA. Vaughn, 484 F.2d 820.

approaches and methodologies for the FFS, and commenting on appropriate recommendations to offer the Army Corps of Engineers concerning the FFS; (2) two proposed agendas for TAG meetings; and (3) two documents authored by Dr. Goldman entitled "Memo for Record", describing and summarizing TAG and IAG opinions and recommendations for the Corps to use in the FFS study. (Vaughn index, Docket Nos. 8-5 and 8-6.)[6,7]

## II. Discussion

Pursuant to Rule 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex

---

[6]The last item in the Vaughn index is a May 31, 2005 "Memo for Record" prepared by Dr. Goldman and addressed to Thomas Minear, summarizing the TAG meeting dates, documents used during those meetings, and topics discussed at the meetings. Defendant submits that this document was inadvertently included in the Vaughn index, and is not responsive to plaintiff's FOIA request as it was created after the submission of such request on April 25, 2005. Defendant further submits that this document was created in anticipation of litigation, and as such is protected from disclosure by the attorney-client privilege.

[7]Defendant had previously released some of the requested material on its website. The released material is the entirety of "document 65", which details the final recommendations of the TAG which the Corps ultimately adopted, and two other documents (nos. 41 and 49) demonstrating disagreement between TAG and IAG. In its April 25, 2005 FOIA request, plaintiff specifically stated that its request did not include any information previously released on the internet. (Plaintiff's FOIA request at 1.)

Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon its pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324.

The FOIA mandates disclosure of records held by a federal agency unless such documents fall within certain enumerated exemptions. 5 U.S.C. §§ 552; 552(b). The FOIA's dominant objective is disclosure, not secrecy, and the FOIA's nine exemptions from compelled disclosure must therefore be narrowly construed. Davis v. CIA, 711 F.2d 858, 861 (8th Cir. 1983).

The FOIA provides for de novo review by a district court of an agency decision to withhold requested information, and places the burden on the agency to demonstrate that a claimed exemption applies. 5 U.S.C. §§ 552; 552(a)(4)(B); In re Department of Justice, 999 F.2d 1302, 1305 (8th Cir. 1993). Where the pleadings and affidavits or declarations show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is the appropriate mechanism for resolving FOIA disclosure disputes. TRIFID v. National Imagery & Mapping Agency, 10 F.Supp.2d 1087, 1090 (E.D. Mo. 1998); Center

for Public Integrity v. Department of Energy, 191 F.Supp.2d 187, 191 (D.D.C. 2002).

"Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Miller v. United States Department of State, 779 F.2d 1378, 1382 (8th Cir. 1986) (citing Weisberg v. U.S. Department of Justice, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). To discharge this burden, the agency must demonstrate that each requested document: (1) has been produced; (2) is unidentifiable; or (3) is exempt from FOIA inspection requirements. Miller, 779 F.2d at 1383 (citing National Cable Television Association, Inc. v. Federal Communications Commission, 479 F.2d 183, 186 (D.C. Cir. 1973). The agency can meet this burden by "submitting affidavits and other evidence to the court to show that the documents are properly classified and thus clearly exempt from disclosure." Hayden v. National Security Agency, 608 F.2d 1381, 1386 (D.C. Cir. 1979); see also Barney v. Internal Revenue Service, 618 F.2d 1268, 1272 (8th Cir. 1980). In Barney, the Eighth Circuit explained, "[A] court's primary role ... is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position ... If the Government fairly describes the content of the material withheld and adequately states its ground for non-disclosure, and if those grounds are reasonable and

consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency." Barney, 618 F.2d at 1272 (quoting Cox v. U.S. Department of Justice, 576 F.2d 1302, 1312 (8th Cir. 1978)); see also Miller, 779 F.2d at 1383 (citing Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)(holding that agency affidavits are equally trustworthy whether they aver that all documents have been produced, are unidentifiable, or are exempt).

After reviewing the evidence submitted by defendant in support of its motion for summary judgment; namely the Minear and Goldman declarations and the Vaughn index, the Court finds that the evidence of record is sufficiently detailed and specific to fully apprise the Court of the nature and scope of the withheld material. The evidence fairly describes the withheld material and adequately states grounds for non-disclosure that are reasonable and consistent with applicable law. See Id. Furthermore, plaintiff's argument that defendant's Vaughn index is insufficiently detailed to demonstrate the true nature of the requested documents fails. Defendant's Vaughn index consists of a total of 19 pages in spreadsheet form, and lists each document date, the names of the author(s), addressee(s), and anyone else to whom the document was sent, the type of document, a brief description of the document, and the claimed privilege. For example, the entry dated September

9, 1997 is typical of the type of entries in defendant's Vaughn index, and provides the following description: "E-mail discussing scope of work of TAG members in reviewing the FFS and potential FFS methodologies". (Vaughn index at 5.) The remainder of the entries provide similar descriptions of discussions regarding potential study methodologies and recommendations the TAG and IAG members might offer to the Corps.

The Defendant's Vaughn index is a "relatively detailed analysis in manageable segments" which sufficiently describes each document to the extent that the nature and general content of each document is clear. Vaughn v. Rosen, 484 F.2d at 826-27. "An analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual language of the document." Id., (citing E.P.A. v. Mink, 410 U.S. 73, 93 (1973)). In this case, defendant provided a sufficiently detailed analysis, and was not required to describe each requested document with such detail that the "secret nature" of the document would be disclosed. Vaughn v. Rosen, 484 F.2d at 826-27.

Furthermore, the evidence of record is not merely conclusory, as plaintiff submits. The Minear declaration in particular fully describes the nature of the FFS and the interplay between the TAG, IAG and the Corps, and further discusses the nature of the requested materials and discusses how its disclosure

would potentially deter future free debate and hinder defendant's ability to empanel such experts in the future. Finally, this Court has no reason to question defendant's good faith, and plaintiff has presented no evidence that defendant's evidence was submitted in bad faith. See Barney, 618 F.2d at 1272.

Defendant's evidence in support of its motion for summary judgment is "relatively detailed," and could not contain further detail without disclosing the secret nature of their contents, the scenario that Exemption 5 expressly seeks to prevent. This Court therefore concludes that an in camera review is not required in order to make a responsible de novo review of the decision to withhold. See Young v. CIA, 972 F.2d 536, 538 (4th Cir. 1992); Silets v. United States Department of Justice, 945 F.2d 227, 229-32 (7th Cir. 1991) (in camera inspection unnecessary when other evidence sufficiently specific); Vaughn v. United States, 936 F.2d 862, 869 (6th Cir. 1991) (in camera review unnecessary and not favored when other evidence provides adequate detail and justification).

As noted, supra, at issue in the instant case is whether the foregoing material is exempted from disclosure by Exemption 5, also called the "deliberative process" exception. 5 U.S.C. § 552(b)(5). Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Id. "Exemption 5 permits nondisclosure if the document in question

is an inter- or intra-agency memorandum which is both predecisional and deliberative." State of Missouri, *ex rel.* Shorr v. United States Army Corps of Engineers, 147 F.3d 708, 710 (8th Cir. 1998) (citing Assembly of State of California v. United States Department of Commerce, 968 F.2d 916, 920 (9th Cir. 1992). A document is "pre-decisional" when it is designed to assist agency decision-makers in arriving at their conclusions, and which contains the personal opinions of the writer rather than the agency's policy. Id. "A document is deliberative if its disclosure would expose the agency's decision-making process in a way that would discourage candid discussion and thus undermine the agency's ability to perform its functions; the focus is on whether the document is part of the agency's deliberative process." Id. Exemption 5 does not apply to factual matters, unless they are "inextricably intertwined" with pre-decisional policy discussions, and could not be extracted without compromising the deliberative process. Mink, 410 U.S. at 87-88; Washington Research Project, Inc. v. Department of Health, Education and Welfare, 504 F.2d 238, 249 (D.C. Cir. 1974).

"The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." Shorr, 147 F.3d at 710 (citing Assembly of State of California, 968 F.2d at 920.) Factors to examine in deciding whether a document

falls within the pre-decisional memoranda/deliberative process exemption include: (1) the identity of the writer and recipient; (2) the nature of the contents of the document; namely, whether it is an opinion or recommendation; (3) the timing of the document relative to the timing of the agency decision; and (4) the status of the document as an opinion or recommendation. See Shorr, 147 F.3d at 710; National Wildlife Federation v. United States Forest Service, 861 F.2d 1114, 1118-20 (9th Cir. 1988); Schell v. United States Department of H.H.S., 843 F.2d 933, 940 (6th Cir. 1988).

As an initial matter, the Court notes that documents prepared by consultants, like those at issue in the instant matter, qualify for protection as "inter-agency" or "intra-agency" communications under Exemption 5 unless the consultants can be said to be acting as advocates on behalf of persons or groups, and not clearly as consultants advising the government. See Department of Interior v. Klamath Water Users Protectors Association, 532 U.S. 1 (2001); see also Hoover v. Department of Interior, 611 F.2d 1132 (5th Cir. 1980); Lead Industries Association v. OSHA, 610 F.2d 70 (2nd Cir. 1979); Soucie v. David, 448 F.2d 1067 (D.C. Cir. 1971). On the basis of the evidence of record and the undisputed facts in this case, this Court finds that the TAG and IAG members herein were not acting as advocates on behalf of any person or group, and were consultants hired to advise the government. The Court therefore concludes that the requested documents qualify as intra- or inter-office communications for purposes of Exemption 5. The

Court must therefore decide whether the requested documents are exempt from disclosure pursuant to Exemption 5.

The Court will first consider the applicability of Exemption 5 to the emails, meeting notes, memoranda and letters dated from 1997 through 2000, prepared by and circulated among TAG and IAG members, and the two documents authored by Dr. Goldman entitled "Memo for Record" which describe and summarize TAG and IAG opinions and recommendations for defendant agency to use in the FFS study, described both <u>supra</u> and in the <u>Vaughn</u> index. These materials are by definition pre-decisional. They were prepared and circulated prior to the completion of the FFS study and issuance of the final report in 2004 and were not the final agency decision. These materials are also deliberative. They were authored by and circulated amongst TAG and IAG members, consultants who were hired to provide advice and recommendations to the Corps to use in conducting the FFS. They evidence the opinions and recommendations between the TAG and IAG members, before the completion of the study, regarding the best methodology to use in executing the FFS. It is apparent, from the evidence submitted by defendant in support of its motion for summary judgment, that these materials record the discussion and debates about what recommendations the TAG and IAG should offer to the government regarding the proper procedure for the FFS, and are therefore the type of communications which were obviously a part of the process by which the ultimate FFS decisions were made. In other words, they reflect the opinions of

"individuals with significant responsibility to the draft opinion, designed to assist agency decision-makers in formulating final agency policy by candidly critiquing the development of the proposed policy", and as such are exactly the types of documents Exemption 5 was designed to protect. See Shorr, 147 F.3d at 710. It is further apparent that disclosure of the materials would expose the workings of defendant agency's decision-making process in such a way as to discourage candid discussion and undermine the agency's ability to perform its functions. See Id.

With respect to these materials, the Court finds that defendant has met its burden to establish that they are both pre-decisional and deliberative, and thus fall within Exemption 5, and plaintiff has not submitted any admissible evidence in rebuttal. See Celotex, 477 U.S. at 324. The materials are the type of preliminary recommendations commonly encompassed by Exemption 5, because they are part of the process by which a government decision was made, and their release would likely impede frank communication within the Corps and between the Corps and future advisory committees. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (deliberative process cases "focus on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"); National Wildlife Federation v. United States Forest Service, 861 F.2d 1114, 1121 (9th Cir. 1988) ("Recommendations on how to best deal with a particular issue are

themselves the essence of the deliberative process.")

Similarly, the proposed meeting agendas are also subject to Exemption 5. These documents are pre-decisional, as they were disseminated prior to the final Corps decision and report. Furthermore, as grounds for exclusion under Exemption 5, defendant submits that the agenda and minutes evidence the issues the TAG and IAG considered worthy of discussion, and as such evidence the thought processes and issues of the TAG and IAG members. This Court finds that these grounds for exclusion are reasonable and consistent with the applicable law, and therefore upholds defendant's position. See Barney, 618 F.2d at 1272 (quoting Cox, 576 F.2d at 1312).

With regard to the May 31, 2005 "Memo for Record" authored by Dr. Goldman and addressed to Thomas Minear, noted supra, the Court finds that it is not responsive to plaintiff's FOIA request and is outside the scope of that request, because it was created after that request was issued to defendant.

Plaintiff submits that the Federal Advisory Committee Act ("FACA") provides for the release of the requested materials. 5 U.S.C. App. 2 § 1 et seq. This argument fails. FACA's statutory language specifically indicates that disclosure pursuant thereto is subject to the FOIA, which includes Exemption 5 which, as explained, supra, applies to the requested materials. See 5 U.S.C. App. 2 § 10(b). Plaintiff further submits that defendant waived Exemption 5 due to its partial release of some documents related to

FFS on the internet, as noted, supra. This argument also fails. As defendant correctly notes, selective disclosure of some withheld material does not waive use of exemptions to protect similar, but undisclosed information. Hertzberg v. Veneman, 273 F.Supp. 2d 67, 81-82 (D.C. Cir. 2003). Further, public availability of similar but not identical information does not lead to waiver for all information on the same subject. Center for International Environmental Law v. Office of the U.S. Trade Representative, 237 F.Supp. 2d 17, 23 (D.D.C. 2002).

The evidence of record compels a finding that defendant properly withheld the requested information as pre-decisional, deliberative material under the deliberative process exemption to FOIA. Defendant's motion for summary judgment should therefore be granted, and plaintiff's motion for summary judgment should be denied.

The Court turns to plaintiff's request for attorneys' fees. A FOIA claimant is eligible for an award of attorneys' fees if he has "substantially prevailed" through his lawsuit. 5 U.S.C. § 552(a)(4)(E); Miller, 779 F.2d at 1389. Although a favorable judgment is not required for such an award, absent such a judgment, a plaintiff must show: (1) that prosecution of the action could reasonably be regarded as necessary to obtain the information; and (2) that the existence of the lawsuit had a causative effect on the release of the information. Id. (citing Ginter v. Internal Revenue Service, 648 F.2d 469, 471 (8th Cir. 1981). Because plaintiff

herein cannot so demonstrate, an award of attorneys' fees is not appropriate.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (Docket No. 8-1) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket No. 9-1) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's request for attorneys' fees is **DENIED.**

_____
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of March, 2007.